# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JERMAINE STEWART,

                            Petitioner,

v.

UNITED STATES OF AMERICA,

                            Respondent.

Case No. 15-CV-73-JPS

ORDER

       The petitioner, Jermaine Stewart, pled guilty to one count of an indictment charging him with conspiracy to distribute one kilogram or more of heroin, resulting in death. (*See, e.g.*, Case No. 08-CR-197, Docket #587, #603). On March 1, 2011, the Court sentenced Mr. Stewart to a term of imprisonment of 300 months. (Case No. 08-CR-197, Docket #832, #833). Mr. Stewart appealed, but, on July 3, 2013, the Seventh Circuit affirmed his conviction. (*See* Case No. 08-CR-197, Docket #928). Mr. Stewart requested rehearing *en banc*, but the Seventh Circuit denied that request in an order dated August 23, 2013. (*See* Case No. 08-CR-197, Docket #930).

       On January 20, 2015, Mr. Stewart filed a motion to vacate his sentence, pursuant to 28 U.S.C. § 2255. (Docket #1). That motion is now before the Court for screening:

> If it plainly appears from the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States Attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

Rule 4(b), Rules Governing § 2255 Proceedings.

1.      TIMELINESS

The Court begins by addressing the timeliness of Mr. Stewart's motion.

1.1      Untimeliness Under 28 U.S.C. § 2255(f)(1)

28 U.S.C. § 2255(f) provides that there is a one-year limitations period in which to file a motion seeking 28 U.S.C. § 2255 relief. That limitations period typically runs from "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). "Finality attaches when [the Supreme Court] affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003).

In this case, it does not appear that Mr. Stewart filed a certiorari petition with the Supreme Court (he has not informed the Court that he ever filed such a petition, nor can the Court locate a petition bearing Mr. Stewart's name in the Supreme Court's docketing system). Thus, Mr. Stewart's conviction became final at the expiration of the 90-day time period to file a certiorari petition. *See* Sup. Ct. R. 13(1). However, because Mr. Stewart filed a request for a rehearing *en banc*, the 90-day period did not begin to run until that request was denied. *See* Sup. Ct. R. 13(3). The Seventh Circuit denied that request on August 23, 2013. (Case No. 08-CR-197, Docket #930).

Thus, his conviction became final on November 21, 2013, which was 90 days after the denial of his request for rehearing *en banc*. Accordingly, under 28 U.S.C. § 2255(f)(1), Mr. Stewart's motion was due within one year: on or before November 21, 2014. In filing it on January 20, 2015 (Docket #1), Mr. Stewart is two months too late.

### 1.2    Potential Exceptions to Untimeliness

That is not the end of the analysis, though, because there are a number of statutory and common-law exceptions that may apply to make Mr. Stewart's petition timely.

#### 1.2.1    Statutory Exceptions

The Court begins with the statutory exceptions. 28 U.S.C. § 2255(f) provides a number of other circumstances in which the one-year limitations period may begin to run later than the date on which the conviction becomes final. *See* 28 U.S.C. §§ 2255(f)(2–4). It does not appear that any of those exceptions apply in this case, though.

##### 1.2.1.1    28 U.S.C. § 2255(f)(2)

The first exception applies in situations where there was some impediment to making the motion caused by the government. 28 U.S.C. § 2255(f)(2). Mr. Stewart does not mention anything that could be construed as government action that prevented him from filing his motion. (*See* Docket #1). Thus, the Court will not apply 28 U.S.C. § 2255(f)(2) to Mr. Stewart's motion.

##### 1.2.1.2    28 U.S.C. § 2255(f)(3)

The second statutory exception applies when the Supreme Court has recognized a new right and made it retroactively applicable to cases on collateral review. 28 U.S.C. § 2255(f)(3). It is the most promising of the statutory exceptions for Mr. Stewart, but again the Court is obliged to find it is inapplicable. The Court does note that two of Mr. Stewart's grounds for relief relate to recent Supreme Court cases, but ultimately concludes that neither ground triggers 28 U.S.C. § 2255(f)(3)'s later starting date.

Mr. Stewart's first ground is that the drug he distributed was not an independently sufficient cause of death or injury. (Docket #1 at 4). This argument relates to the Supreme Court's recent decision in *Burrage v. United States*, decided on January 27, 2014, holding that a defendant cannot be liable for the death-results enhancement provision unless the use of the drug supplied was a but-for cause of the death. *Burrage*, --- U.S. ----, 134 S.Ct. 881, 892 (2014). But several courts have already found that *Burrage* did not announce a new rule of constitutional law and that, even if it had, the Supreme Court did not make *Burrage* retroactively applicable. *See, e.g., In re: Carlos Alvarez*, No. 14-10661-D at 3 (11th Cir. Mar. 6, 2014) (petitioner not allowed to file second or successive § 2255 motion because the Supreme Court "did not expressly hold that *Burrage* is retroactive on collateral review."); *United States v. Bourlier*, No. 3:14cv609, 2014 WL 6750674 at *2 (N.D. Fla. December 1, 2014); *Alvarez v. Hastings*, No. CV214-070, 2014 WL 4385703 at *1 (S.D. Ga. Sep. 5, 2014); *De La Cruz v. Quintana*, No. 14-28-KKC, 2014 WL 1883707 at *6 (E.D. Ky. May 1, 2014); *Taylor v. Cross*, No. 14-CV-304, 2014 WL 1256371 at *3 (S.D. Ill. Mar. 26, 2014); *Powell v. United States*, No. 3:09-CV-2141, 2014 WL 5092762 at *2 (D. Conn. Oct. 10, 2014). Thus, *Burrage* does not trigger 28 U.S.C. § 2255(f)(3)'s application.

The other potential 28 U.S.C. § 2255(f)(3) trigger is Mr. Stewart's third ground: that he is actually innocent. This could relate to *McQuiggin v. Perkins*, --- U.S. ----, 133 S.Ct. 1924 (2013), which discussed actual innocence as a gateway for untimely petitions. But the Supreme Court has never recognized actual innocence as a cognizable, standalone habeas claim, so the Court would be reluctant to find that it announced a new and retroactively-applicable right. *See, e.g., Herrera v. Colins*, 506 U.S. 390, 404 (1993);

*McQuiggin*, 133 S.Ct. at 1931 ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."). In any event, the Supreme Court decided *McQuiggin* on May 28, 2013—before the Seventh Circuit's action on Mr. Stewart's appeal. So, even if the limitations period ran from the issuance of *McQuiggins*, Mr. Stewart's motion would still be untimely. 28 U.S.C. § 2255(f)(3).

### 1.2.1.3  28 U.S.C. § 2255(f)(4)

The final statutory exception applies when the facts supporting a claim could not have been discovered earlier. 28 U.S.C. § 2255(f)(4). But, again, that exception does not apply in this case because Mr. Stewart does not allege that there is any newly-discovered evidence in this case.

In sum, none of the exceptions to 28 U.S.C. § 2255(f)(1)'s general rule apply in this case. Accordingly, the Court is obliged to determine that 28 U.S.C. § 2255(f)(1) applies, making Mr. Stewart's motion untimely.

### 1.2.2  Common Law Exceptions

There are two other potentially-applicable common law exceptions that may apply to make Mr. Stewart's motion timely.

### 1.2.2.1  Actual Innocence

The first of those exceptions is the "actual innocence gateway" recognized in *McQuiggins. See* 133 S.Ct. 1924. To determine whether this exception applies, the Court must decide whether Mr. Stewart offers "new evidence" that would be sufficient to make a credible claim for actual innocence; he does not. *See Schlup v. Delo*, 513 U.S. 298, 324 (1995) (claim of actual innocence "requires a petitioner to support his allegations of constitutional error with new reliable evidence."). In fact, Mr. Stewart does not satisfy either portion of that formulation: he does not offer new evidence

and it is clear that he is *not* actually innocent of the crime of which he was convicted.

As to new evidence, Mr. Stewart does not even allege that there is any new evidence in this case. So he clearly fails that requirement.

Even if Mr. Stewart presented new evidence, though, he would also have to show that the new evidence supported a "credible" claim for actual innocence, which requires a showing that "it is more likely than not that no reasonable juror would have convicted him," in light of the evidence. *See, e.g., id.*; *McQuiggin*, 133 S.Ct. at 1927. He clearly could not do that in this case.

To begin, the Court found and the Seventh Circuit agreed that Mr. Stewart was responsible for distributing the drugs that caused the victims' deaths:

> In this case, it is clear that Stewart's actions and conduct led to the victims' deaths. He supplied his distributors and relied upon them to resell to end users. It was certainly understood that recipients of drugs Stewart provided would resell, share, or otherwise offer the drugs to unknown or unauthorized users. Like our sister circuits, we acknowledge that our analysis might differ if a defendant's participation in the chain of distribution is especially removed from a victim's resulting death, as in the cases of Walker and Gladney. In such cases, "a court might conclude that it would not be consistent with congressional intent to apply the mandatory 20–year minimum sentence." But Stewart's case does not require us to weigh these concerns. The victims' deaths were directly caused by Stewart's criminal conduct; indeed, they were part of the ordinary course of business for the conspiracy he led. Therefore Stewart is liable for the deaths and we affirm the district court's application of the penalty to his sentence.

*United States v. Walker*, 721 F.3d 828, 839-40 (7th Cir. 2013) *cert. granted, judgment vacated sub nom. Lawler v. United States*, 134 S. Ct. 2287 (2014) (vacating judgment only of Mr. Stewart's co-defendant Jean Lawler).

Granted, the Seventh Circuit's discussion, above, focuses exclusively on Mr. Stewart's role in the conspiracy, rather than whether the heroin sold by Mr. Stewart was a but-for cause of the deaths of the victims, as required by *Burrage*, 134 S.Ct. at 891–92. But the charge to which Mr. Stewart pled guilty included the following language:

> d.     *Death and serious bodily injury resulted from the use of the heroin distributed in furtherance of the conspiracy, including the heroin overdose deaths of the following individuals:*

(Docket #587, ¶ 4 (after which the charge names five separate individuals whose deaths resulted from heroin overdoses)).

Thus, in pleading guilty, Mr. Stewart acknowledged the fact that the heroin he sold caused "the heroin overdose deaths" of five individuals. (Docket #587, ¶ 4). The fact that Mr. Stewart's charge involved "heroin overdose deaths" is more than sufficient, in the Court's eyes, to establish that the heroin sold by Mr. Stewart was a but-for cause of the deaths, as required by *Burrage*, 134 S.Ct. at 891–92.

Moreover, Mr. Stewart's presentence report describes the circumstances surrounding the victims' deaths, making clear that the defendant's heroin was a but-for cause—in fact *the sole* cause—of the victims' deaths. (*See* Docket #810). The presentence report describes the deaths of each of the five victims, and reports only heroin (obtained through Mr. Stewart's supply chain in each instance) as having been ingested and having caused the death. (Docket #810, ¶¶ 29, 37, 43, 71–72, 75–76). In at least two cases, autopsy results established that the cause of death was "opiate intoxication"

or "heroin intoxication," establishing that the heroin supplied by Mr. Stewart was a but-for cause of death. (Docket #810, ¶¶ 37, 43). Significantly, Mr. Stewart did not object to any of the facts relating to the heroin deaths. (*See* Docket #10, Ex. 1 (of the above-cited paragraphs, objecting only to Paragraph 72 and Paragraph 76, and objecting to non-death related facts as to each).[1]

In any event, Mr. Stewart has not presented any credible evidence to show that the heroin was *not* a but-for cause of the deaths, such that "no reasonable juror" could find that the heroin he sold caused the deaths. *See Schlup*, 513 U.S. at 324.

For all of these reasons, the actual-innocence gateway described by *McQuiggins* is not available to Mr. Stewart.

### 1.2.2.2   Equitable Tolling

In the final portion of its timeliness analysis, the Court must determine whether to equitable toll the one-year limitations period. *See United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000). Equitable tolling is "reserved for extraordinary circumstances far beyond the litigant's control that prevented timely filing." *Socha v. Boughton (Socha II)*, 763 F.3d 674, 684 (7th Cir. 2014) (quoting *Nolan v. United States*, 358 F.3d 480, 484 (7th Cir. 2004)). To be entitled to equitable tolling, a petitioner bears the burden of establishing: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Socha II*, 763 F.3d at 683–84 (citing *Holland v. Florida*, 560 U.S. 631, 649 (2010);

---

[1]Mr. Stewart filed a handwritten letter/memorandum describing his desire that the Court use a but-for standard in determining whether the death resulting enhancement applied, but in doing so never objected to any of the facts that would go directly to establishing the heroin he sold as a but-for cause of death. (*See* Docket #810, Ex. 1 at 16–21).

*Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008)) (internal quotation marks omitted).

The Seventh Circuit has recently cautioned district courts that equitable tolling is not a "chimera—something that exists only in the imagination." *Socha II*, 763 F.3d at 684. Rather, despite not having approved of equitable tolling of a habeas corpus petition for many years, *see Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008), the Seventh Circuit now notes that courts "are not free…to regard equitable tolling as something that exists in name only; this would render the Supreme Court's explicit approval of equitable tolling in *Holland* a nullity." *Socha II*, 763 F.3d at 684 (citing *McQuiggin*, 133 S. Ct. at 1931). In *Davis v. Humphreys*, 747 F.3d 497, 498–99 (7th Cir. 2014), the Seventh Circuit held that mental incompetence may support equitable tolling of the 28 U.S.C. § 2244(d) limitations period, and remanded the case to the district court "for a more nuanced evaluation of the petitioner's mental capabilities." *Socha II*, 763 F.3d at 684 (citing *Davis*, 747 F.3d at 498–99). Likewise, the Seventh Circuit has issued other rulings that implicate portions of the equitable tolling analysis where prison officials intentionally confiscated a petitioner's legal papers, *Weddington v. Zatecky*, 721 F.3d 456, 464–65 (7th Cir. 2013), and where a district court provided erroneous legal information to a petitioner, *Carter v. Hodge*, 726 F.3d 917, 919 (7th Cir. 2013).

Given this somewhat-inconsistent guidance, there is one principle that seems most clear: "The realm of equitable tolling is a 'highly fact-dependent area' in which courts are expected to employ 'flexible standards on a case-by-case basis.'" *Socha II*, 763 F.3d at 684 (quoting *Socha v. Pollard (Socha I)*, 621 F.3d 667, 672; citing *Holland*, 560 U.S. at 650–52). In keeping with that

principle, "it is difficult to conceive of a situation where a claim of equitable tolling would be clear on the face of the petition," so it is generally accepted that the Court should not dismiss a petition *sua sponte* on timeliness grounds, without input from the parties. *See, e.g.*, *Gildon v. Bowen*, 384 F.3d 883 (7th Cir. 2004) (also noting that the limitations period of 28 U.S.C. § 2244 "is an affirmative defense, [which] the state has the burden of" proving) (citing *Acosta v. Artuz*, 221 F.3d 117, 121–22 (2d Cir. 2000); *United States v. Burke*, 504 U.S. 229, 246 (1992) (Scalia, J. concurring)); *see also Ray v. Clements*, 700 F.3d 993, 1006 (7th Cir. 2012).

In discussing this, the Court also notes that the first page of Mr. Stewart's motion bears evidence that may weigh in favor of equitable tolling: there are two stamps that read "RETURNED," and bear the name of Thomas Bruton, who is the clerk of the Northern District of Illinois. (*See* Docket #1 at 1). Those two stamps are dated November 3, 2014, and November 17, 2014. (*See* Docket #1 at 1). This implies that Mr. Stewart tried and failed to submit his motion to the Northern District of Illinois twice before sending it to the Eastern District of Wisconsin (this district). Of course, because this Court imposed Mr. Stewart's sentence, it is the proper court before which to file a 28 U.S.C. § 2255 motion. 28 U.S.C. § 2255(a) ("may move the court *which imposed the sentence* to vacate, set aside or correct the sentence.").

The Court cannot be sure as to why Mr. Stewart initially filed his motion in the Northern District of Illinois, but—whatever the reason—it

may form the basis for application of equitable tolling.[2] Accordingly, it would seem to be inappropriate for the Court to dismiss this action as untimely without offering Mr. Stewart an opportunity to further brief issues of timeliness.

The Court will, ultimately, require further briefing in this case. As the Court will discuss in further detail, setting aside any timeliness concerns, it may still "dismiss a petition *sua sponte* if it appears on its face to be without merit." *Gildon v. Bowen*, 384 F.3d at 886 (citing *Acosta v. Artuz*, 221 F.3d 117, 122 (2d Cir. 2000)); *see also* Rule 4(b), Rules Governing § 2255 Proceedings. And this may be such a case. In addition to the timeliness issues discussed by the Court, serious concerns remain as to whether Mr. Stewart's petition is second or successive and also whether his stated grounds for relief can even form the basis for relief.

2.      SECOND OR SUCCESSIVE MOTION

28 U.S.C. § 2255(h) states that "[a] second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain" either newly discovered evidence or a new rule of

---

[2]Mr. Stewart would face an uphill battle to establish that equitable tolling is appropriate, as the Seventh Circuit has already determined that so many things *do not* constitute extraordinary circumstances. *See e.g.*, *Johnson v. McCaughtry*, 265 F.3d 559, 566 (7th Cir. 2001) (incarceration, alone, is not an extraordinary circumstance); *Socha II*, 763 F.3d at 685 (placement in segregation, alone is not an extraordinary circumstance) (citing *Hizbullahankhamon v. Walker*, 105 F. Supp. 2d 339, 344 (S.D.N.Y. 2000), *aff'd* 255 F.3d 65, 75 (2d Cir. 2001)); *Socha II*, 763 F.3d at 685 (lack of legal representation is not an extraordinary circumstance) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)); *Taylor v. Michael*, 724 F.3d 806, 811 (7th Cir. 2013) (lack of legal knowledge is not an extraordinary circumstance); *Modrowski v. Mote*, 322 F.3d 965, 968 (7th Cir. 2003) (attorney's incapacity is not an extraordinary circumstance). And that does not even mention the fact that Mr. Stewart would still have to establish that he acted diligently.

constitutional law made retroactive to cases on collateral review. There is no question that Mr. Stewart did not receive authorization to file his motion in this case, and thus his motion would be subject to immediate dismissal if it is "second or successive." The Court is concerned that Mr. Stewart may already have filed a document that should be classified as his first 28 U.S.C. § 2255 motion, which would make the one under consideration "second or successive."

As the Court has already discussed, the Seventh Circuit affirmed Mr. Stewart's conviction on July 3, 2013, after which it denied his petition for a rehearing *en banc*. (7th Cir. Case No. 11-1510, Docket #59, #71). Nearly a year later, on August 12, 2014, Mr. Stewart, acting *pro se*, filed a group of papers with the Seventh Circuit. (7th Cir. Case No. 11-1510, Docket #73). That filing was docketed as "Pro se motion filed by Appellant Jermaine J. Stewart to recall the mandate in support of objections to death resulting enhancement." (7th Cir. Case No. 11-1510, Docket #73). The filing actually consists of two separate documents.

Mr. Stewart did, indeed, caption the first page of the first document as "MOTION TO RECALL MANDATE IN SUPPORT OF OBJECTIONS TO DEATH RESULTING ENHANCEMENT." (7th Cir. Case No. 11-1510, Docket #73 at 1). He then went on to provide arguments very similar to those raised in the motion now before the Court: that *Burrage* applies and, in conjunction with *Alleyne*, operates to require resentencing or a lower sentence. (*See, e.g.*, 7th Cir. Case No. 11-1510, Docket #73 at 2–7). Mr. Stewart signed that first document, and it contains a notary seal dated June 25, 2014. (7th Cir. Case No. 11-1510, Docket #73 at 7).

The second document is captioned "Title 18 U.S.C. § 3582(c)(2) Motion to Modify and reduce sentence pursuant to Plain Error criminal procedure rule 52(b) And the U.S.S.G. 2D1.1." (7th Cir. Case No. 11-1510, Docket #73 at 9). In that document, Mr. Stewart again makes various arguments similar to those he is raising in the motion now before the Court. (*See, e.g.*, 7th Cir. Case No. 11-1510, Docket #73 at 9–16). Mr. Stewart also signed this document, and it contains a notary seal dated August 4, 2014. (7th Cir. Case No. 11-1510, Docket #73 at 16). Finally, Mr. Stewart attached a copy of the *Burrage* opinion.

The Seventh Circuit, in a one sentence order issued by Judge Ann Williams, denied Mr. Stewart's *pro se* motions, stating in full: "Upon consideration of the MOTION TO RECALL MANDATE IN SUPPORT OF OBJECTIONS TO DEATH RESULTING ENHANCEMENT, filed on August 12, 2014, by the pro se appellant, IT IS ORDERED that the motion to recall the mandate is DENIED." (7th Cir. Case No. 11-1510, Docket #74 at 1).

In light of all of this, the Court believes that Mr. Stewart's post-appeal filing with the Seventh Circuit—docketed as a motion to recall the mandate, consistent with the caption of the first portion of the filing—should be construed as his first 28 U.S.C. § 2255 motion. Many courts, including the Seventh Circuit, have treated motions to recall a mandate as second or successive motions pursuant to 28 U.S.C. § 2255(h) (or its state habeas analog, 28 U.S.C. § 2244(b)). *See, e.g.*, *United States v. Ford*, 383 F.3d 567, 568 (7th Cir. 2004) ("We have held that motions to recall the mandate in a direct criminal appeal cannot be used to avoid the successive petition restrictions of 28 U.S.C. § 2255.") (citing *United States v. Prevatte*, 300 F.3d 792, 796–97 (7th Cir. 2002); *Gray-Bey v. United States*, 209 F.3d 986, 988 (7th Cir. 2000); *Calderon v.*

*Thompson*, 523 U.S. 538, 553–54 (1998)); *Lambert v. Buss*, 489 F.3d 779, 780 (7th Cir. 2007) ("Motions to recall the mandate in a § 2254 habeas case are subject to the restrictions on successive petitions found in § 2244(b).") (citing *Calderon*, 523 U.S. at 553–54; *Benefiel v. Davis*, 403 F.3d 825, 827 (7th Cir. 2005); *Burris v. Parke*, 130 F.3d 782, 784–85 (7th Cir. 1997)); *United States v. Redd*, 735 F.3d 88, 90 (2d Cir. 2013) ("'[W]hen a defendant moves to recall the mandate based on intervening precedent that calls into question the merits of the decision affirming his conviction, we construe the motion as one to vacate the defendant's sentence pursuant to 28 U.S.C. § 2255.'") (quoting *United States v. Fabian*, 555 F.3d 66, 68 (2d Cir. 2009); citing *Bottone v. United States*, 350 F.3d 59, 63 (2d Cir. 2003)); *Bottone*, 350 F.3d at 63 (criminal defendant "cannot evade the successive petition restrictions of 28 U.S.C. § 2255…by framing his claims as a motion to recall the mandate.").

However, the Court hesitates to summarily dismiss Mr. Stewart's motion as second or successive on this point because it has been unable to locate a case with an identical factual predicate. In all of the cases that the Court has found, the petitioner filed a motion to recall the mandate *after* previously filing his or her initial 28 U.S.C. § 2255 motion (or § 2254 petition). Here, on the other hand, Mr. Stewart filed his *pro se* motion to recall the mandate *before* filing the 28 U.S.C. § 2255 petition now before the Court.

As a matter of logic, the Court should perhaps view this as a distinction without a difference. For, if a motion to recall a mandate can be considered a second or successive motion for purposes of 28 U.S.C. § 2255(h), why should it not also be considered an initial motion for the same purposes?

Language from the Seventh Circuit implies that this should be the case. In *Ford*, the Seventh Circuit stated that: "We have held that motions to

recall the mandate in a direct criminal appeal cannot be used to avoid the successive petition restrictions of 28 U.S.C. § 2255." 383 F.3d at 568. That language implies that the Court should treat Mr. Stewart's current 28 U.S.C. § 2255 motion as second or successive, in order to prevent the formation of a loophole to 28 U.S.C. § 2255(h)'s bar on such petitions. For instance, if courts were *not* to treat earlier-filed motions to recall a mandate as initial petitions, that would allow all federal criminal defendants two bites at the apple. They could first file a motion to recall the mandate with the Seventh Circuit; after that, they could file a 28 U.S.C. § 2255 motion. This would seem to undermine the purpose of 28 U.S.C. § 2255(h)'s bar on second or successive petitions.

The Second Circuit's language applies even more clearly: "'[W]hen a defendant moves to recall the mandate based on intervening precedent that calls into question the merits of the decision affirming his conviction, we construe the motion as one to vacate the defendant's sentence pursuant to 28 U.S.C. § 2255.'" *Redd*, 735 F.3d at 90 (quoting *Fabian*, 555 F.3d at 68). By its plain terms, that language makes clear that a motion to recall a mandate should be treated as a 28 U.S.C. § 2255 motion.

The Court is not without its doubts, though. As the Court has already noted, there is no case law that is precisely on point. Perhaps more importantly, it does not appear that the Seventh Circuit gave any substantive consideration to Mr. Stewart's motion. The Seventh Circuit denied it in a single sentence without providing any reason or authority. (7th Cir. Case No. 11-1510, Docket #74 at 1). Of course, because Mr. Stewart was *pro se* at the time that he filed his 28 U.S.C. § 2255(h) motion, it is likely that Mr. Stewart simply did not understand what he was filing (or the way that his filing

would impact his ability to file a 28 U.S.C. § 2255(h) motion in the future). Simply put, the Court is reluctant to hold that Mr. Stewart should be barred from having the merits of his 28 U.S.C. § 2255 motion considered by this Court simply as a result of his having first accidentally filed a motion to recall the mandate before the Seventh Circuit (the merits of which, it must be noted, the Seventh Circuit did not address).

In the end, because there are significant issues regarding timeliness that remain to be addressed, the Court finds that the better exercise of discretion is to also allow the parties to brief this issue. So, at this juncture, the Court will not bar Mr. Stewart's motion as second or successive pursuant to 28 U.S.C. § 2255(h).

3.     MERITS OF MR. STEWART'S CLAIMS

Mr. Stewart's claims also face trouble on their merits. Thus, they may be subject to summary dismissal on that basis, as well, regardless of the timeliness and successiveness issues. Mr. Stewart alleges the following four claims for relief:

(1)     that use of the drugs distributed by the defendant was not an independently sufficient cause of the victims' death as is now required by *Burrage*, 134 S.Ct. at 892 (the Court will refer to this as the "*Burrage* claim");

(2)     that Mr. Stewart was under duress—"of such a nature as to include a well-grounded apprehension of de[a]th or serious bodily injury"—when he signed the plea agreement (the "plea agreement claim");

(3)     that heroin did not cause the victims' deaths (the "actual innocence claim"); and

(4)     that the Court misapplied the Armed Career Criminal Act, 18 U.S.C. § 924(e) (the "misapplication claim").

(Docket #1 at 5–6).

### 3.1 *Burrage* and Actual Innocence Claims

The *Burrage* claim and the actual innocence claim are closely related. Both essentially argue that Mr. Stewart cannot be liable in light of *Burrage*, because the Court did not find that the drugs supplied by Mr. Stewart were a but-for cause of the victims' deaths or, alternatively, that the drugs actually were not the but-for cause of the deaths. In fact, the Court can see little substantive difference between the two claims. Nonetheless, the Court must construe his petition liberally, since he is appearing *pro se*. *Ward v. Jenkins*, 613 F.3d 692, 697 (2010).

Thus, because Mr. Stewart has pled two separate claims for relief, the Court will assume that he intended to do so. As best as the Court can discern, in the *Burrage* claim, Mr. Stewart may be attempting to have *Burrage* apply retroactively to his case. Meanwhile, the actual innocence claim may relate solely to what Mr. Stewart believes to be the fact that the drugs he sold did not actually cause the victims' deaths.

In that event, the *Burrage* claim still appears likely to be without merit. That is because the courts that have considered such claims have generally concluded that *Burrage* does not apply retroactively. *See, e.g.*, *In re: Carlos Alvarez*, No. 14-10661-D at 3; *Bourlier*, 2014 WL 6750674 at *2; *Alvarez*, 2014 WL 4385703 at *1; *De La Cruz*, 2014 WL 1883707 at *6; *Taylor*, 2014 WL 1256371 at *3; *Powell*, 2014 WL 5092762 at *2. Because the Court will ultimately request further briefing in this case, it will not dismiss this claim at this juncture.

Meanwhile, the actual innocence claim fails because it is not recognized as a cognizable stand-alone claim. *See, e.g.*, *Herrera*, 506 U.S. at 404; *McQuiggin*, 133 S.Ct. at 1931 ("We have not resolved whether a prisoner

may be entitled to habeas relief based on a freestanding claim of actual innocence."). Thus, the Court can summarily dismiss the actual innocence claim at this juncture.

### 3.2    Plea Agreement Claim

Mr. Stewart's plea agreement claim may ultimately survive screening (in the unlikely event that the Court determines his petition is not untimely and not successive), but it is extremely weak.

Again, it is not absolutely clear what the nature of this claim is, but the Court must construe it liberally. *See Ward*, 613 F.3d at 697. In full, Mr. Stewart states that he:

> was under an unlawful and present imminent and impending threat of such a nature as to include a well grounded apprehension of de[a]th or serious bodily injury as stated at his change of plea hearing repeatedly told by counsel e[i]ther plea out or you'll get life.

(Docket #1 at 5). Mr. Stewart may be arguing that he did not enter his guilty plea knowingly and voluntarily, perhaps because his counsel was ineffective in assessing his potential sentence or perhaps because he was somehow coerced into pleading guilty. (*See* Docket #1 at 5). Each of those potential arguments faces significant hurdles.

If he is arguing that his counsel was ineffective or that he misunderstood the potential for a life sentence, he likely will be unable to prevail because a life sentence was, *in fact*, a distinct possibility that was readily disclosed to Mr. Stewart. (*See* Docket #811 at 2 (noting guideline range as 360 months to Life and statutory maximum as 20 years to Life; moreover, if the defendant went to trial and was convicted, he would face the loss of acceptance of responsibility credit as well as the potential additional

enhancement for obstruction of justice, either or both of which would have made a life sentence more likely); Docket #859 at 9:20–10:16 (noting potential negative impact of going to trial), 15:22 (defendant acknowledging potential for life imprisonment)).

If, on the other hand, he is arguing that he was somehow coerced into accepting a guilty plea, he will also likely fail: at his plea colloquy, Mr. Stewart was given an ample opportunity to speak and discussed the process leading up to his plea agreement without mentioning any coercion; he ultimately agreed that he was guilty of the charged offenses and that he could not challenge his sentence if he was ultimately unhappy with his sentence. (Docket #859 at 11:25–17:14, 19:6-19:13).

In either case, the Court is entitled to Mr. Stewart's statements under oath at his plea colloquy, *see, e.g.*, *United States v. Moody*, 770 F.3d 577, 581–82 (7th Cir. 2014) ("There is no reason to disbelieve [defendant]'s sworn statements and, thus, no reason to disturb his guilty plea.") (citing *United States v. Messino*, 55 F.3d 1241, 1248–49 (7th Cir. 1996); *Hutchings v. United states*, 618 F.3d 693, 699 (7th Cir. 2010)), and those statements go a long way towards showing that Mr. Stewart's plea was valid as knowing and voluntary.

The Court will not summarily dismiss this claim at this stage. However, the Court cautions Mr. Stewart that, absent sufficiently detailed new information, it would be difficult for the Court to conclude that there was any issue with Mr. Stewart's plea.

### 3.3    Misapplication Claim

Finally, there is Mr. Stewart's misapplication claim. Again, the basis for this claim is unclear. Mr. Stewart says of it, in full:

the prior convictions used to enhance my punishment under the career criminal act does not trigger the mandatory drug amount of 26.2 grams that can be consistent with hearing a federal felon[]y or serious drug offence the four sentencing act does not apply higher sentences and it does not prohibit lowering penalties.

(Docket #1 at 6). The Court must construe the claim liberally, though. *See Ward*, 613 F.3d at 697. Doing so, it seems that he could be arguing that the Court miscalculated his sentence by treating Mr. Stewart as a career criminal.

But there is no evidence that the Court did so. There is no mention of the career criminal statute in Mr. Stewart's judgment, plea agreement, sentencing minutes, sentencing recommendation, or presentence report. (*See* Docket #587, #810, #811, #860, #833). In fact, government counsel made clear during Mr. Stewart's plea hearing that he had agreed *not* to attempt to enhance Mr. Stewart's sentence with the facts of his prior convictions. (Docket #859 at 25:10–26:6).

If Mr. Stewart is complaining about the computation of the drug weight, he would also fail. He accepted the factual predicate of his plea agreement, which provided a drug weight of 1 kilogram or more. (Docket #587 at 2; Docket #859 at 12:18–14:25, 24:13–24:23).

Despite the fact that this claim seems to be meritless, the Court will not summarily dismiss it. Perhaps Mr. Stewart will be able to clarify his intention in further briefing.

4.      CONCLUSION

Mr. Stewart's motion is on very thin ice. It appears untimely and successive. Moreover, his claims appear to be without merit. However, before denying his motion in its entirety, the Court will request further briefing from the parties. Within 30 days of the entry of this order, the

respondent should file a brief addressing the issues of timeliness, successiveness, and the facial merits of Mr. Stewart's claims. Thereafter, Mr. Stewart shall file a response within 30 days. The respondent may then file a reply within 14 days, if it wishes to do so. The Court will hold Mr. Stewart's motion in abeyance until it has received this further briefing.

Finally, the Court notes that Mr. Stewart has filed a motion for leave to proceed *in forma pauperis*. (Docket #2). However, there is no charge associated with filing a 28 U.S.C. § 2255 motion, so the Court will deny Mr. Stewart's motion for leave to proceed *in forma pauperis* as moot.

Accordingly,

IT IS ORDERED that within thirty (30) days of the entry of this order, the respondent should file a brief addressing the issues of timeliness, successiveness, and the facial merits of Mr. Stewart's claims. Thereafter, Mr. Stewart shall file a response within thirty (30) days. The respondent may then file a reply within fourteen (14) days, if it wishes to do so.

IT IS FURTHER ORDERED that Mr. Stewart's motion for leave to proceed *in forma pauperis* (Docket #2) be and the same is hereby DENIED as moot.

Dated at Milwaukee, Wisconsin, this 5th day of February, 2015.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge